No. 25-1982

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JESUS JOSE PIZARRO REYES,

*Petitioner-Appellee*,

v.

KEVIN RAYCRAFT, in his official capacity as
Acting Field Office Director of Enforcement
and Removal Operations, Detroit Field Office,

*Respondent-Appellant.*

———————————

On Appeal from the United States District Court
for the Eastern District of Michigan
No. 2:25-cv-12546-RJW (White, J.)

———————————

## APPELLANTS' OPENING BRIEF

———————————

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
General

DREW C. ENSIGN
Deputy Assistant Attorney General

BENJAMIN HAYES
Senior Counsel to the Assistant
Attorney General

MELISSA NEIMEN-KELTING
Assistant Director

MALCOLM McDERMOND
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin
Station
Washington, DC 20044
Tel: (202) 305-7662

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................. i

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ...............................viii

INTRODUCTION ....................................................................................1

STATEMENT OF JURISDICTION ............................................................ 4

STATEMENT OF THE ISSUE .................................................................. 4

STATEMENT OF THE CASE ................................................................... 4

    I.    Statutory Framework .................................................................. 4

        A.    The Pre-IIRIRA Framework Gave Preferential Treatment to Aliens Who Unlawfully Entered and Are Present in the United States. ................................... 4

        B.    IIRIRA Eliminated the Preferential Treatment of Aliens Who Unlawfully Entered in the United States and Mandated Detention of "Applicants for Admission." ................................................................7

        C.    DHS Concluded That Section 1225(b)(2)(A) Requires Detention of All Applicants for Admission .......13

    II.    Factual Background and Procedural History ...........................15

        A.    Petitioner Entered the United States without Admission and was Detained for Removal Proceedings .................................................................15

        B.    The District Court Granted the Habeas Petition and Ordered DHS to Grant Petitioner A Bond Hearing .........16

SUMMARY OF ARGUMENT ................................................................. 17

STANDARD OF REVIEW........................................................ 20

ARGUMENT ...................................................................... 20

I.    Section 1225(b)(2) Mandates Detention of Aliens, Like Petitioner, Who Are Present in the United States Without Having Been Admitted. ................................................. 20

    A.    The Plain Language of Section 1225(b)(2) Mandates Detention of Applicants for Admission. ..................................21

    B.    The District Court's Decision Disregards the Clear Text of Section 1225(b)(2)(A)........................................................ 22

        1.    Section 1225 is not Limited to "Arriving Aliens.".......... 23

        2.    Section 1225(b)(2)'s Reference to Aliens "Seeking Admission" Does not Narrow the Statute's Scope.......... 26

    C.    Section 1226(c) Does Not Support the District Court's Reading................................................................... 35

    D.    The District Court's Narrow Interpretation Subverts Congressional Intent. .......................................... 40

    E.    The Supreme Court's Decision in *Jennings* Does Not Undermine the Government's Interpretation........................ 42

CONCLUSION .................................................................. 44

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

## Cases

*Armstrong v. Exceptional Child Ctr., Inc.*,
   575 U.S. 320 (2015)................................................................31

*Att'y Gen. of United States v. Wynn*,
   104 F.4th 348 (D.C. Cir. 2024) ...........................................27

*Barton v. Barr*,
   590 U.S. 222 (2020)............................................2, 18, 32, 40

*Bhd. Of R.R. Trainmen v. Baltimore & Ohio R. Co.*,
   331 U.S. 519 (1947)........................................................2, 24

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   586 U.S. 63 (2019)..............................................................31

*Heyman v. Cooper*,
   31 F.4th 1315 (11th Cir. 2022) ............................................ 33

*Hing Sum v. Holder*,
   602 F.3d 1092 (9th Cir. 2010) .......................................5, 6, 7

*Hose v. I.N.S.*,
   180 F.3d 992 (9th Cir. 1999)................................................ 5

*Jennings v. Rodriguez*,
   583 U.S. 281 (2018)........................9, 10, 12, 19, 20, 21, 43, 44

*Kaplan v. Tod*,
   267 U.S. 228 (1925)........................................................... 42

*King v. Burwell*,
   576 U.S. 473 (2015) .......................................................41, 42

*Kleber v. CareFusion Corp.*,
   914 F.3d 480 (7th Cir. 2019)...............................................27

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
   523 U.S. 26 (1998)..............................................................21

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    591 U.S. 657 (2020)...............................................................20

*Martinez v. Att'y General of U.S.*,
    693 F.3d 408 (2012)................................................................ 6

*Martinez v. Larose*,
    968 F.3d 555 (6th Cir. 2020)................................................20

*Matter of Lemus-Losa*,
    25 I & N. Dec. 734 (BIA 2012)..............................................28

*Matter of Yajure Hurtado*,
    29 I. & N. Dec. 216 (BIA 2025)........................5, 6, 7, 13, 14, 15

*Mejia Olalde v. Noem*,
    2025 WL 3131942 (E.D. Mo. Nov. 10, 2025) ...................21, 24, 29, 31, 39

*Microsoft Corp. v. I4I Ltd. P'ship*,
    564 U.S. 91 (2011)................................................................. 39

*Nat'l Pork Producers Council v. Ross*,
    598 U.S. 356 (2023) ..............................................................44

*New York State Dep't of Soc. Servs. v. Dublino*,
    413 U.S. 405 (1973) ..............................................................41

*Ortega-Cervantes v. Gonzalez*,
    501 F.3d 1111 (9th Cir. 2007) ..............................................11

*Pereira v. Sessions*,
    585 U.S. 198 (2018)...............................................................31

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
    566 U.S. 639 (2012)...............................................................35

*Rimini St., Inc. v. Oracle USA, Inc.*,
    586 U.S. 334 (2019)...............................................................32

*Shaughnessy v. United States ex rel. Mezei*,
    345 U.S. 206 (1953)...............................................................42

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*,
    576 U.S. 519 (2015)...............................................................27

*Dep't of Homeland Security v. Thuraissigiam,*
   591 U.S. 103 (2020).........................................................5, 8, 42

*Torres v. Barr,*
   976 F.3d 918 (9th Cir. 2020) .................................................7

*Trs. of Sheet Metal Workers Loc. 7 Zone 1 Pension Fund v. Pro Servs., Inc.,*
   65 F.4th 841 (6th Cir. 2023) ................................................ 23

*United States v. Bronstein,*
   849 F.3d 1101 (D.C. Cir. 2017) ........................................... 33

*Villarreal v. R.J. Reynolds Tobacco Co.,*
   839 F.3d 958 (11th Cir. 2016) ...............................................27

*Yamataya v. Fisher,*
   189 U.S. 86 (1903)............................................................... 42

## Statutes

8 U.S.C. § 1101(a)(13) (1994)...................................................... 5

8 U.S.C. § 1101(a)(13)(A) ..................................................... 7, 21

8 U.S.C. § 1103(A)(13)(C)......................................................... 30

8 U.S.C. § 1127.........................................................................14

8 U.S.C. § 1182(a)(6)(A)......................................................13, 38

8 U.S.C. § 1182(b)(5) .............................................................. 38

8 U.S.C. § 1182(d)(5)(A) ..........................................................10

8 U.S.C. § 1225 .........................................................................1

8 U.S.C. § 1225(a) .................................................................. 22

8 U.S.C. § 1225(a)(1)..............................1, 8, 17, 21, 25, 26, 30

8 U.S.C. § 1225(a)(3) ..................................................8, 18, 25, 27

8 U.S.C. § 1225(a)(4) ............................................................. 34

8 U.S.C. § 1225(a)-(b) (1995) ................................................. 5

8 U.S.C. § 1225(b)...................................................14

8 U.S.C. § 1225(b)(1)................................................ 29

8 U.S.C. § 1225(b)(1)-(2)........................................ 8

8 U.S.C. § 1225(b)(2)...................................vii, 13, 16

8 U.S.C. § 1225(b)(2)(A) ..............1, 4, 10, 15, 16, 21, 22, 26, 31, 32, 34, 38

8 U.S.C. § 1225(b)(2)(B) ....................................... 9

8 U.S.C. § 1226 ..................................................... 11

8 U.S.C. § 1226(a)................................... 13, 14, 16, 35

8 U.S.C. § 1226(c)...................................................12

8 U.S.C. § 1226(c)(1)......................................... 12, 37

8 U.S.C. § 1226(c)(1)(A)...........................................37

8 U.S.C. § 1226(c)(1)(E)...........................................13

8 U.S.C. § 1226(c)(4) ........................................... 38

8 U.S.C. § 1227(a).........................................11, 37, 44

8 U.S.C. § 1229a.............................................15, 22

8 U.S.C. § 1229a(c)(2)(A)........................................ 34

8 U.S.C. § 1229b(b)(1) ........................................ 35

8 U.S.C. §§ 1182..................................................12

28 U.S.C. § 2241 ................................................. 20

28 U.S.C. §§ 1291................................................ 4

28 U.S.C. §§ 1331................................................ 4

Pub. L. No. 119-1................................................12

**Rules**

Federal Rule of Appellate Procedure 34(a)(2)...........................................vii

**Regulations**

8 C.F.R. § 235.3(b)(1)(ii).....................................................................10, 30

8 C.F.R. § 236.1(c)(8) ...............................................................................12

8 C.F.R. § 236.1(d)(1)................................................................................ 11

**Other Authorities**

Illegal Immigration Reform and Immigration Responsibility Act, Pub.L. 104-208, 110 Stat. 3009 (Sept. 30, 1996). ............................................... 6

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(2) and 6 Cir. R. 34(a), Respondent-Appellant submits that oral argument will assist the Court in resolving this appeal. This appeal addresses the interpretation of the Government's immigration detention authority under 8 U.S.C. § 1225(b)(2)—a recurring issue that has arisen in many dozens (if not hundreds) of cases filed within this Circuit over the last several months. Oral argument will aid the Court in evaluating the parties' arguments on the proper interpretation of § 1225(b)(2) and facilitate the Court's resolution of this important question of the Government's detention authority that will determine the outcome of the plethora of cases pending in this Circuit.

# INTRODUCTION

Before 1996, the federal immigration laws required the detention of aliens who presented at a port of entry but allowed aliens who had entered and were already unlawfully present in the United States to obtain release pending removal proceedings. Congress overhauled the immigration system in 1996 with passage of the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), which had amongst its goals the specific objective of ending the preferential treatment of aliens who evade inspection and enter the United States unlawfully.

As relevant here, Congress enacted what is now codified at 8 U.S.C. § 1225. That provision "deem[s]" any "alien present in the United States who has not been admitted or who arrives in the United States" to be "an applicant for admission." 8 U.S.C. § 1225(a)(1). And it mandates the detention of any "applicant for admission" who cannot show that they are "clearly and beyond a doubt entitled to be admitted." *Id.* § 1225(b)(2)(A). The statute makes no exception for how far into the country the alien traveled or how long the alien managed to evade detection. Unless the Secretary exercises the narrow and discretionary parole authority, mandatory detention is the rule for aliens who have never been lawfully admitted.

There is no dispute that Petitioner is an "applicant for admission" under Section 1225(a), and that he cannot (and has not) shown that he is "clearly and beyond a doubt" entitled to be admitted. Petitioner entered the country without inspection, was never "admitted," and thus unambiguously remains an "applicant for admission." Nor does Petitioner contest that he was never admitted into the United States. Yet despite the clear statutory text, the district court held that Petitioner is entitled to a bond hearing and potential release despite Section 1225's prohibition. That was error.

The lower court relied on "contextual clues," such as the statute's title, to justify a cramped reading that limits Section 1225(b)(2) to aliens who are "arriving" at the border. That reading is flatly contradicted by the statute; even if Section 1225's title supported the lower court's ruling (it does not), a statute's title cannot override unambiguous statutory text, as the Supreme Court has consistently admonished. *See Bhd. Of R.R. Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947) ("*Trainmen*").

The court's reading of Section 1225(b)(2) cannot be justified out of a need to avoid surplusage in Section 1225(b)(2). There is no surplusage—but even if there were, "redundancies are common in statutory drafting" and are "not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Barton v. Barr*, 590 U.S. 222, 239 (2020). Besides, that canon

has no relevance where, as here, there would be redundancy under *any* interpretation.

The district court's atextual reading also is not necessary to give effect to the separate detention authority in Section 1226. On its face, that provision applies to numerous aliens *not* subject to Section 1225(b)(2)(A), including all *admitted* aliens who are now removable—such as the more than a million aliens in the United States who were lawfully admitted but overstayed visas. For those aliens, Section 1226 alone applies. The mere fact that Section 1226(c) may overlap in part with Section 1225(b)(2)(A) is insufficient to rewrite clear statutory text. Although the Government has previously operated under a different understanding of the law, this Court must apply the language of Section 1225(b)(2)(A) as written.

Ultimately, the district court's interpretation is not only contrary to the statute's text but is antithetical to congressional intent. It would reimpose the same inequitable framework that IIRIRA was meant to eliminate—requiring the detention of aliens who present at a port of entry as the law requires but authorizing the release of those aliens who evade inspection and enter the United States in violation of law. The Court should not endorse such a backwards outcome, particularly one that is so plainly subversive of congressional intent.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 2241. The district court granted Petitioner's petition for writ of habeas corpus on September 9, 2025. Order, RE 12, PageID #201. The Respondent-Appellant timely filed a notice of appeal on October 24, 2025. Notice of Appeal, RE 16, PageID # 257-58. This Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253(a).

## STATEMENT OF THE ISSUE

Whether 8 U.S.C. § 1225(b)(2)(A) requires the Department of Homeland Security ("DHS") to detain all aliens who are present in the United States without admission pending their removal proceedings, regardless of how long an alien has been unlawfully present in the United States or how far the alien's incursion into the country.

## STATEMENT OF THE CASE

### I.  Statutory Framework

#### A.  The Pre-IIRIRA Framework Gave Preferential Treatment to Aliens Who Unlawfully Entered and Are Present in the United States.

The Immigration and Nationality Act ("INA"), as amended, contains a comprehensive framework governing the regulation of aliens, including the creation of proceedings for the removal of aliens who unlawfully enter the

United States or otherwise removable and requirements for when the Executive is obligated to detain aliens pending removal.

Prior to 1996, the INA treated aliens differently based on whether the alien had presented at a port of entry or evaded inspection and entered the United States. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 222-23 (BIA 2025) (citing 8 U.S.C. §§ 1225(a), 1251 (1994)); *see Hing Sum v. Holder*, 602 F.3d 1092, 1099-1100 (9th Cir. 2010) (same). "Entry" referred to "any coming of an alien into the United States," 8 U.S.C. § 1101(a)(13) (1994), and whether an alien had physically entered the United States (or not) "dictated what type of [immigration] proceeding applied" and whether the alien would be detained pending those proceedings, *Hing Sum*, 602 F.3d at 1099.[1]

At the time, the INA "provided for two types of removal proceedings: deportation hearings and exclusion hearings." *Hose v. I.N.S.*, 180 F.3d 992, 994 (9th Cir. 1999) (en banc). An alien who arrived at a port of entry would be placed in "exclusion proceedings and subject to mandatory detention, with potential release solely by means of a grant of parole." *Hurtado*, 29 I. & N. Dec. at 223; *see* 8 U.S.C. §§ 1225(a)-(b) (1995), 1226(a) (1995). In

---

[1] Aliens who arrive at a port of entry have physically "entered" the United States, but under the longstanding "entry fiction" doctrine, "aliens who arrive at ports of entry ... are 'treated' for due process purposes as if stopped at the border." *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020).

contrast, an alien who evaded inspection and physically entered the United States would be placed in deportation proceedings. *Hurtado*, 29 I. & N. Dec. at 223; *Hing Sum*, 602 F.3d at 1100. Aliens in deportation proceedings, unlike those in exclusion proceedings, "were entitled to request release on bond." *Hurtado*, 29 I. & N. Dec. at 223 (citing 8 U.S.C. § 1252(a)(1) (1994)).

Thus, the INA's prior framework distinguishing between aliens based on "entry" had

> the 'unintended and undesirable consequence' of having created a statutory scheme where aliens who entered without inspection 'could take advantage of the greater procedural and substantive rights afforded in deportation proceedings,' *including the right to request release on bond*, while aliens who had 'actually presented themselves to authorities for inspection' … were subject to mandatory custody.

*Hurtado*, 29 I. & N. Dec. at 223 (emphasis added) (quoting *Martinez v. Att'y General of U.S.*, 693 F.3d 408, 413 n.5 (2012)); *see Hing Sum*, 602 F.3d at 1100 (similar); H.R. Rep. No. 104-469, pt. 1, at 225 (1996) ("House Rep.") ("illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection").

**B.   IIRIRA Eliminated the Preferential Treatment of Aliens Who Unlawfully Entered in the United States and Mandated Detention of "Applicants for Admission."**

Congress discarded that prior regime through enactment of IIRIRA, Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996).  Among other things, that law sought to "ensure[] that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc).

To that end, IIRIRA replaced the prior focus on physical "entry" and instead made lawful "admission" the touchstone.  IIRIRA defined "admission" to mean "the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A) (emphasis added).  In other words, the immigration laws no longer distinguish between aliens based on whether they manage to evade detection and enter the country without permission.  Instead, the "pivotal factor in determining an alien's status" is "whether or not the alien has been *lawfully* admitted." House Rep., *supra*, at 225 (emphasis added); *Hing Sum*, 602 F.3d at 1100 (similar).  IIRIRA also eliminated the exclusion/deportation dichotomy and consolidated both sets of proceedings into "removal proceedings." *Hurtado*, 29 I. & N. Dec. at 223.

IIRIRA effected these changes through several provisions codified in Section 1225 of Title 8.

**Section 1225(a):** Section 1225(a) codifies Congress's decision to make lawful "admission," rather than physical entry, the touchstone. That provision states that an alien "present in the United States who has not been admitted or who arrives in the United States" "shall be deemed ... an applicant for admission":

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1). "All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." *Id.* § 1225(a)(3). The inspection by the immigration officer is designed to determine whether the alien may be lawfully "admitted" to the country or, instead, must be referred to removal proceedings.

**Section 1225(b):** IIRIRA also provided for expedited removal and non-expedited "Section 240" proceedings and mandated that applicants for admission be detained pending those proceedings. 8 U.S.C. § 1225(b)(1)-(2).

Section 1225(b)(1) provides for so-called "expedited removal proceedings," *DHS v. Thuraissigiam*, 591 U.S. 103, 109-113 (2020), which may be applied to a subset of aliens—those who (1) are "arriving in the United States," or (2) have "not been admitted or paroled into the United States" and have "not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(i)-(iii). As to these aliens, the immigration officer shall "order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum ... or a fear of persecution." *Id.* § 1225(b)(1)(A)(i). In that event, the alien "shall be detained pending a final determination of credible fear or persecution and, if found not to have such fear, until removed." *Id.* § 1225(b)(1)(B)(iii)(IV); *see* 8 C.F.R. § 235.3(b)(4)(ii). An alien processed for expedited removal who does not indicate an intent to apply for asylum or a fear of persecution or who is determined not to have a credible fear is likewise detained until removed. 8 U.S.C. § 1225(b)(1)(A)(i), (B)(iii)(IV); *see* 8 C.F.R. § 235.3(b)(2)(iii).

Section 1225(b)(2) is a "catchall provision that applies to all applicants for admission not covered by [subsection (b)(1)]." *Jennings v. Rodriguez,*

583 U.S. 281, 287 (2018).[2] It requires that those aliens be detained pending Section 240 removal proceedings:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title [Section 240].

8 U.S.C. § 1225(b)(2)(A) (emphasis added); *see* 8 C.F.R. § 235.3(b)(1)(ii) (mirroring Section 1225(b)(2)'s detention mandate); *Jennings*, 583 U.S. at 302 (holding that Section 1225(b)(2) "mandate[s] detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin").

While Section 1225(b)(2) does not allow for aliens to be released on bond, the INA grants DHS discretion to exercise its parole authority to temporarily release an applicant for admission, but "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Parole, however, "shall not be regarded as an admission of the alien." *Id.*; *Jennings*, 583 U.S. at 288 (discussing parole authority). Moreover, when the Secretary determines that "the purposes of such

---

[2] Section 1225(b)(2)(A) also does not apply to (1) crewmen or (2) stowaways. 8 U.S.C. § 1225(b)(2)(B). In addition, the Executive has discretion to return aliens who have arrived on land from a contiguous territory to that territory pending removal proceedings. *Id.* § 1225(b)(2)(C).

parole … have been served," the "alien shall … be returned to the custody from which he was paroled" and be "dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

**Section 1226:** IIRIRA also created a separate authority addressing the arrest, detention, and release of aliens generally (versus applicants for admission specifically). *See* 8 U.S.C. § 1226. This provision governs the detention of aliens who were admitted to the country but later become removable—for example, admitted aliens who overstay or otherwise violate the terms of their visas, engage in conduct that renders them removable despite having permanent resident status, or are later determined to have been improperly admitted. *See* 8 U.S.C. § 1227(a).

The statute provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Detention under this provision is generally discretionary. The Attorney General "may" either "continue to detain the arrested alien" or release the alien on bond or conditional parole. *Id.* § 1226(a)(1)-(2).[3] In

---

[3] Conditional parole under Section 1226(a) is distinct from parole under Section 1182(d)(5)(A). *See Ortega-Cervantes v. Gonzalez*, 501 F.3d 1111, 1116 (9th Cir. 2007).

practice, DHS makes the initial custody determination. 8 C.F.R. § 236.1(d)(1). The alien may seek custody redetermination (a bond hearing) before an immigration judge and can appeal an immigration judge's custody determination to the Board of Immigration Appeals. 8 C.F.R. §§ 236.1(c)(8), (d), 1236.1(d)(1), 1003.19.

That "default rule" does not apply to certain criminal aliens who are being released from the custody of another law enforcement agency. *Jennings*, 583 U.S. at 288; *see* 8 U.S.C. § 1226(c). Section 1226(c) provides that "[t]he Attorney General shall take into custody" certain classes of criminal aliens—those who are inadmissible or deportable because the alien (1) "committed" certain offenses delineated in 8 U.S.C. §§ 1182 and 1227; or (2) engaged in terrorism-related activities. 8 U.S.C. § 1226(c)(1). The Executive must detain these aliens after "the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." *Id.* Such aliens may be released only if DHS determines "that release of the alien from custody is necessary" to protect a witness to a "major criminal activity" or similar person, and then only if the alien "will not pose a danger" to public safety and is not a flight risk. *Id.* § 1226(c)(4).

Congress recently amended Section 1226(c) through the Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3 (2025), which additionally requires detention of (and prohibits parole for) criminal aliens who (1) are inadmissible because they are physically present in the United States without admission or parole (8 U.S.C. § 1182(a)(6)(A)), have committed a material misrepresentation or fraud, (*id.* § 1182(a)(6)(C)), or lack required documentation, (*id.* § 1182(a)(7); and (2) are "charged with, [] arrested for, [] convicted of, admit[] having committed, or admit[] committing acts which constitute the essential elements of" certain listed offenses. 8 U.S.C. § 1226(c)(1)(E).

## C. DHS Concluded That Section 1225(b)(2)(A) Requires Detention of All Applicants for Admission.

For many years after IIRIRA, DHS and most immigration judges treated aliens who entered the United States without admission as being subject to discretionary detention under 8 U.S.C. § 1226(a), rather than mandatory detention under 8 U.S.C. § 1225(b)(2). *See Hurtado*, 29 I. & N. Dec. at 225 n.6. Until this year, however, the Board of Immigration Appeals had not issued any precedential opinion on the appropriate detention authority for such individuals.

On July 8, 2025, DHS "revisited its legal position on detention and release authorities" and issued interim guidance that brought the Executive's practices in line with the statute's plain text. Pet. for Writ of Habeas Corpus ("Pet."), RE 2, PageID #35 n.2 (link to interim guidance). Specifically, DHS concluded that all aliens who enter the country without being admitted are "subject to detention under INA § 235(b) [8 U.S.C. § 1225(b)] and may not be released from ICE custody except by INA § 212(d)(5) parole." *Id.* As a result, the "only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under the INA § 236(a) [8 U.S.C. § 1226(a)] are aliens admitted to the United States and chargeable with deportability under INA § 237 [8 U.S.C. § 1127]." *Id.*

The Board of Immigration Appeals also adopted this interpretation in *Hurtado*. The Board concluded that Section 1225(b)(2)'s mandatory detention regime applies to *all* aliens who entered the United States without inspection and admission:

> Aliens … who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer. Remaining in the United State for a lengthy period of time following entry without inspection, by itself, does not constitute an "admission."

29 I. & N. Dec. at 228. Thus, under Board precedent, "[i]mmigration Judges lack authority to hear bond requests or to grant bond to aliens … who are present in the United States without admission." *Id.* at 225.

## II.   Factual Background and Procedural History

### A.   Petitioner Entered the United States without Admission and was Detained for Removal Proceedings.

The basic facts of this case are not in dispute. Petitioner entered the United States illegally sometime in 2005, without inspection or admission. Pet., RE 2, PageID #38. DHS encountered Petitioner on June 26, 2025, in Detroit, Michigan. *Id.*; *see also* Mitchell Decl., RE 4-2, PageID #92. DHS determined that Petitioner is inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i)(I), as an alien present in the United States without having been admitted or paroled, or who arrived at a time or place not designated by the Attorney General, as well as under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Mitchell Decl., RE 4-2, PageID #92 (stating ICE determined that Petitioner was inadmissible when it detained him on or around June 26, 2025); *see also* Pet'r's Reply Brief, Ex. 1, Form I-862, Notice to Appear (charging Petitioner as inadmissible under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i)), RE 6-1, PageID #131.

DHS initiated removal proceedings against Petitioner under 8 U.S.C. § 1229a and determined he must be detained for the duration of those

proceedings under 8 U.S.C. § 1225(b)(2)(A). Mitchell Decl., RE 4-2, PageID #92-94. Petitioner requested a custody redetermination hearing before an immigration judge ("IJ"). Pet., RE 2, PageID #39. Although the IJ initially granted Petitioner bond, the IJ subsequently amended his decision and denied bond, concluding that 8 U.S.C. § 1225(b)(2)(A) deprived him of authority to redetermination Petitioner's custody. *Id.*, PageID #40; Bond Memo., RE 2-3, PageID #49-51; Mitchell Decl., RE 4-2, PageID #94-95.

**B.   The District Court Granted the Habeas Petition and Ordered DHS to Grant Petitioner A Bond Hearing.**

Petitioner filed a petition for writ of habeas corpus seeking release from detention or a bond hearing under 8 U.S.C. § 1226(a). Pet., RE 2, PageID #27-43. The district court granted the petition on September 9, 2025. Order, RE 12, PageID #178-201. The court held that Petitioner's detention is not governed by 8 U.S.C. § 1225(b)(2) but instead by 8 U.S.C. § 1226(a), which allows the Government to release an alien on bond or conditional parole during removal proceedings. *Id.*, PageID #188-99.

In its decision, the court acknowledged the plain language of Section 1225(a) and (b)(2), but concluded that this "statutory text does not provide a definitive answer." Order, RE 12, PageID #189. Instead, the court looked to "contextual clues" like Section 1225's title to conclude that Section

1225(b)(2)(A) applies only to "arriving" aliens. *Id.*, PageID #189-91. In addition, the court thought its narrow reading of Section 1225(b)(2) necessary to avoid rendering superfluous the Laken Riley Act's amendment of Section 1226(c). *Id.*, PageID #192.

The district court ordered Respondent-Appellant either to provide Petitioner a bond hearing under Section 1226(a) within seven days or release him. *Id.*, PageID #201. On September 11, 2025, Petitioner was released on bond. Status Report, RE 13, PageID #202.

## SUMMARY OF ARGUMENT

The INA's plain language requires DHS to detain aliens, like Petitioner, who are present in the United States without admission. The district court's contrary conclusion flouts the statute's text and subverts congressional intent. The Court should reverse.

**I.** Section 1225 of Title 8 deems all aliens who are "present in the United States" without admission to be "applicants for admission," and it mandates that all such applicants for admission—except for those subject to expedited removal or otherwise exempted—"shall be detained" during their removal proceedings. 8 U.S.C. § 1225(a)(1), (b)(2)(A). Detention is mandatory, regardless of the duration of the alien's presence in the United States or the alien's distance from the border.

**II.** The district court relied on the "overall context" of Section 1225, particularly the reference to "arriving aliens" and "inspection" in the statute's titles and headings, to limit Section 1225(b)(2)(A)'s detention mandate to aliens entering the country. A statute's title, however, "cannot limit the plain meaning of the text." *Trainmen*, 331 U.S. at 528-29. Moreover, especially where a statute, like Section 1225, covers a range of subjects, its headings are not meant as a comprehensive summary of its content. The district court erred in elevating titles and headings over the statute's unambiguous language.

**III.** The phrase "seeking admission" in Section 1225(b)(2) does not undermine the Government's reading. The statute makes clear that an alien who is an "applicant for admission" is necessarily "seeking admission." *See* 8 U.S.C. § 1225(a)(3). No additional, affirmative act is needed for an "applicant for admission" to be "seeking admission." That is consistent with the everyday meaning of the terms; as a matter of plain English, a person who is *applying* for something is necessarily *seeking* it. This reading does not render the term "seeking admission" redundant; read consistent with the provision's structure, every portion has independent meaning. But even if there were redundancy, "[r]edundancies are common in statutory drafting," and "[r]edundancy in one portion of a statute is not a license to rewrite or

eviscerate another portion of the statute contrary to its text." *Barton v. Barr*, 590 U.S. 222, 223 (2020).

**IV.**  The government's reading of Section 1225(b)(2) does not render Section 1226(c) superfluous.  Here, too, the district court fretted about redundancy, but Section 1226(c)'s mandatory detention provisions, including as amended by the Laken Rily Act, govern a significant swath of aliens who are *not* covered by Section 1225(b)(2) at all—for example, admitted aliens.  The mere fact that the provisions overlap is not a basis for rewriting Section 1225(b)(2)'s clear text.  Even as to the areas of overlap, Section 1226(c) does considerable independent work by prohibiting the Secretary from granting parole to those aliens it covers.

**V.**  To make matters worse, the district court's interpretation would reimpose the same perverse regime that IIRIRA was meant to eliminate— requiring the detention of aliens who present at a port of entry as the law requires, but authorizing the release of those aliens who enter the United States in violation of law and make *no effort* to prove admissibility.  The Court should not endorse such a backwards outcome—particularly one that is so plainly subversive of congressional intent.

**VI.**  The Government's interpretation of Section 1225(b)(2) is consistent with *Jennings*, 583 U.S. 281.  That case did not address the scope

of Sections 1225 and 1226's detention authority. Even so, *Jennings* characterized Section 1225(b)(2) consistent with the Government's interpretation as "a catchall provision that applies to all applicants for admission not covered by §1225(b)(1)." *Id.* at 287.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's grant or denial of a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Martinez v. Larose*, 968 F.3d 555, 558 (6th Cir. 2020).

## ARGUMENT

### I. Section 1225(b)(2) Mandates Detention of Aliens, Like Petitioner, Who Are Present in the United States Without Having Been Admitted.

Under the plain language of Section 1225(b)(2), DHS is required to detain all aliens, like Petitioner, who are present in the United States without admission and are subject to removal proceedings—regardless of how long the alien has been in the United States or how far from the border they ventured. That unambiguous language resolves this case. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 676 (2020) ("Our analysis begins and ends with the text."). The district court thus erred by holding that Section 1225(b)(2)(A) applies only to the narrow subset of applicants who are arriving in the United States. That reading is

incompatible with the unambiguous statutory text and subverts Congress's manifest purposes in adopting Section 1225(b)(2)(A).

## A. The Plain Language of Section 1225(b)(2) Mandates Detention of Applicants for Admission.

Section 1225(a) deems all aliens who are "present in the United States [and] ha[ve] not been admitted or who arrive[] in the United States" to be "applicant[s] for admission." 8 U.S.C. § 1225(a)(1). And "admission" under the INA means not mere physical entry, but "lawful entry ... after inspection" by immigration authorities. 8 U.S.C. § 1101(a)(13)(A). Thus, an alien who enters the country without inspection and admission is and remains an applicant for admission, regardless of the duration of the alien's presence in the United States or the alien's distance from the border. *See Mejia Olalde v. Noem*, 2025 WL 3131942, at *2-3 (E.D. Mo. Nov. 10, 2025).

In turn, Section 1225(b)(2) provides that "an alien who is an applicant for admission" "shall be detained" pending removal proceedings if the "alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). The statute's use of the term "shall" denotes that detention is mandatory. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998); *see Jennings*, 583 U.S. at 302 (holding that Section 1225(b)(2) "mandate[s] detention"). And the statute makes no exception for the duration of the alien's presence in the

country or how far the alien's incursion into the country. Therefore, except for those aliens expressly exempted, the statute's plain text mandates that DHS detain all "applicants for admission" who are not "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).

Petitioner falls squarely within the statutory definition. He was "present in the United States," there is no dispute that he has "not been admitted," and he does not fall within any of the exceptions to Section 1225(b)(2)(A). 8 U.S.C. § 1225(a), (b)(2)(B); *supra*, pp. 15. Moreover, he cannot—and did not—establish that he is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A); *supra*, pp. 15. Therefore, Petitioner "shall be detained for a proceeding under [8 U.S.C. § 1229a]." 8 U.S.C. § 1225(b)(2)(A).

## B. The District Court's Decision Disregards the Clear Text of Section 1225(b)(2)(A).

Despite the clear language of Section 1225, the district court held that Section 1225(b)(2) applies only to aliens "arriving" in the United States, not those already present. Order, RE 12, PageID #180, 187-97. That reading directly contradicts the statute. Nor is there any other interpretation of Section 1225(b)(2)(A) that would exclude aliens, like Petitioner, who evaded inspection and were unlawfully in the United States.

1. **Section 1225 is not Limited to "Arriving Aliens."**

Purporting to rely on "the overall context of § 1225," the district court held that the statute, including Section 1225(b)(2)(A), applies only to aliens arriving in the United States and *not* to those already physically present in the country. Order, RE 12, PageID #189-91. Yet none of the statutory features on which the court relied remotely supports its cramped reading of the statute.

**a.** The lower court looked first to the statute's title, reasoning that the title's reference to "arriving aliens"—"expedited removal of inadmissible arriving aliens"—"strongly indicates that the statute governs the *entrance* of noncitizens to the United States," not those already present. Order, RE 12, PageID #190 (emphasis in original). But a statute's title is "of use only when [it] shed[s] light on some ambiguous word or phrase"; it "cannot limit the plain meaning of the text." *Trainmen*, 331 U.S. at 528-29 (titles "cannot undo or limit that which the text makes plain"); *see Trs. of Sheet Metal Workers Loc. 7 Zone 1 Pension Fund v. Pro Servs., Inc.*, 65 F.4th 841, 848 (6th Cir. 2023) (same).

Here, Section 1225's text makes crystal clear that it applies to aliens who are already physically present in the United States, not just to those who are arriving. Section 1225(a)(1) deems aliens already "present in the United

States who ha[ve] not been admitted" to be applicants for admission, and it differentiates those aliens from aliens who are "arriv[ing] in the United States." 8 U.S.C. § 1225(a)(1). And nothing in Section 1225(b)(2)(A) refers to "arriving aliens." The same goes for the neighboring subsection (b)(1): It extends expedited removal procedures not just to "arriving" aliens but also to aliens who have been "physically present in the United States" for up to two years. 8 U.S.C. § 1225(b)(1)(A)(i), (iii)(II). The statute's title "cannot undo or limit that which the text makes plain." *Trainmen*, 331 U.S. at 529.

Section 1225's title is a particularly weak indicator of the statute's scope because it addresses numerous subjects and classes of aliens, including arriving aliens. "Where the text is complicated and prolific, headings and titles can do no more than indicate the provisions in a most genral [*sic*] manner," and often "neglect[] to reveal that [the statute] also deals with" a variety of other subjects. *Trainmen*, 331 U.S. at 528 ("That the heading of s 17 fails to refer to all matters which the framers of that section wrote into the text is not an unusual fact."). That is the case here. The title's reference to arriving aliens cannot narrow the statute's scope or "limit the plain meaning of the text." *Id.*

Besides, the title refers to "arriving aliens" in a clause addressing "*expedited removal* of inadmissible ... aliens," and expedited removal is

governed by subsection (b)(1), not subsection (b)(2). 8 U.S.C. § 1225(b)(2)(B)(ii) (emphasis added). The title's reference to arriving aliens has no relevance to the scope of Section 1252(b)(2). *See Mejia Olalde*, 2025 WL 3131942, at *3 ("§ 1225(b)(2) addresses the third subject ('referral for hearing'), not the second subject ('expedited removal')").

**b.** Next, the lower court reasoned that the use of the word "inspection" in the heading of Section 1225(b)(2) reinforces "the idea that the subsection applies to those coming in, not already present." Order, RE 12, PageID #190. Again, the statute forecloses that inference. Section 1225 provides that "all aliens ... *who are applicants for admission* or otherwise seeking admission or readmission ... *shall be inspected* by immigration officers." 8 U.S.C. § 1225(a)(3) (emphasis added). That includes not only aliens "arriv[ing] in the United States," but also those already "present in the United States who ha[ve] not been admitted." *Id.* § 1225(a)(1).

The preceding discussion all but disposes of the district court's final theory that Section 1225(b)(2)(A)'s reference to "crewm[e]n" and "stowaways" "suggest[s]" that the statute is limited to "arrival at a border or port of entry." Order, RE 12, PageID #190. Yes, Section 1225(b)(2)(A) also applies to certain aliens who arrive in the United States, which is why excluding "crewm[e]n" and "stowaways" from Section 1225(b)(2)(A)

required express exemptions. *See* 8 U.S.C. § 1225(b)(2)(B)(i), (iii). But again, the statute "deem[s]" *both* aliens who are arriving in the United States and those already "present in the United States" to be "applicant[s] for admission." *Id.* § 1225(a)(1). Congress's decision to exclude certain aliens who arrive in the United States from Section 1225(b)(2)(A) does not otherwise limit the provision's scope.

### 2. Section 1225(b)(2)'s Reference to Aliens "Seeking Admission" Does not Narrow the Statute's Scope.

Petitioner is likely to argue that the phrase "seeking admission" in Section 1225(b)(2)(A) requires that the provision be read to apply only to applicants for admission who are taking affirmative steps to gain admission to the United States—not aliens, like Petitioner, who was residing unlawfully in the United States *without* making any effort to gain admission. That is wrong. The statute itself makes clear that an alien who is an "applicant for admission" *is* necessarily "seeking admission."

**a.** Section 1225(b)(2) requires the detention of an "applicant for admission, if the examining officer determines that [the] alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). The statutory text and context show that being an "applicant for admission" is a means of "seeking

admission"—no additional affirmative step is necessary. In other words, every "applicant for admission" is inherently and necessarily "seeking admission," at least absent a choice to pursue voluntary withdrawal or voluntary departure.

Section 1225(a) provides that "[a]ll aliens … who are applicants for admission *or otherwise* seeking admission or readmission … shall be inspected." 8 U.S.C. § 1225(a)(3) (emphasis added). The word "[o]therwise' means 'in a different way or manner[.]'" *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 535 (2015) (quoting Webster's Third New International Dictionary 1598 (1971)); *see also Att'y Gen. of United States v. Wynn*, 104 F.4th 348, 354 (D.C. Cir. 2024) (same); *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 963-64 (11th Cir. 2016) (en banc) ("or otherwise" means "the first action is a subset of the second action"); *Kleber v. CareFusion Corp.*, 914 F.3d 480, 482-83 (7th Cir. 2019). Being an "applicant for admission" is thus a particular "way or manner" of seeking admission, such that any alien who is an "applicant for admission" *is* "seeking admission" for purposes of Section 1252(b)(2)(A).

"Seeking admission" is thus "a term of art" that includes not only aliens who "entered the United States with visas or other entry documents before their presence became lawful," but also aliens who "entered unlawfully or

[were] paroled into the United States but were deemed constructive applicants for admission by operation of section 235(a)(1) of the Act." *Matter of Lemus-Losa*, 25 I & N. Dec. 734, 743 n.6 (BIA 2012) (emphases omitted). As a result, "many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be 'seeking admission' under the immigration laws." *Id.* at 743 (emphasis in original). For example, an alien who previously unlawfully entered the United States and is never admitted, departs, and subsequently submits a literal application for admission to the United States—*e.g.*, applies for a visa—is deemed to be "*again* seek[ing] admission" to the United States. *Id.* at 743-44 & n.6 (emphasis added) (quoting and discussing 8 U.S.C. § 1182(a)(9)(B)(i)(I)-(II)). Mere presence without admission *is* seeking admission "by operation of law." *Id.*

The everyday meaning of the statutory terms also supports this reading. One may "seek" something without "applying" for it—for example, one who is "seeking" happiness is not "applying" for it. But one *applying* for something is necessarily *seeking* it. *Compare* Webster's New World College Dictionary 69 (4th ed.) ("apply" means "To make a formal request (*to* someone *for* something)"), *with id.* at 1299 ("seek" means "to request, ask for"); *accord Mejia Olalde*, 2025 WL 3131942, at *3 ("To 'seek' is a synonym

of to 'apply' for."). For example, a person who is "applying" for admission to a college or club is "seeking" admission to the college or club. *See* The American Heritage Dictionary of the English Language 63 (1980) ("American Heritage Dictionary") ("apply" means "[t]o request or *seek* employment, acceptance, or *admission*") (emphasis added). Likewise, an alien who is "applying" for admission to the United States (*i.e.*, an "applicant for admission") is necessarily "seeking admission" to the United States.

Neither the duration of an alien's unlawful presence in the United States nor his distance from the border alters the legal reality that an "applicant for admission" is "seeking admission." "Congress knows how to limit the scope" of the INA "geographically and temporally when it wants to." *Mejia Olalde*, 2025 WL 3131942, at *4. For example, Section 1225(b)(1) may apply to aliens "arriving in the United States" or who "ha[ve] been physically present in the United States continuously for [a] 2-year period." 8 U.S.C. § 1225(b)(1). So, "[i]f Congress meant to say that an alien no longer is 'seeking admission' after some amount of time in the United States, Congress knew how to do so." *Mejia Olalde*, 2025 WL 3131942, at *4. It did not. To the contrary, Section 1225(a)(1)'s inclusion of *both* aliens "arriving" and those "present in the United States" confirms that *all* aliens who are not

admitted are "applicants for admission," regardless of the length of their presence in the country. 8 U.S.C. § 1225(a)(1).

None of this is to say, however, that "seeking admission" has no meaning beyond "applicant for admission." As Section 1225(a)(3) shows, being an "applicant for admission" is only *one* "way or manner" of "seeking admission," *supra*, pp. 26-27—not the exclusive way. For example, lawful permanent residents returning to the United States are not "applicants for admission" but they still may be deemed to be "seeking admission" in some circumstances. *See* 8 U.S.C. § 1103(A)(13)(C). But for purposes of Section 1225(b)(2) and its regulation of "applicants for admission," the statute unambiguously provides that an alien who is an "applicant for admission" is "seeking admission," even if the alien is not engaged in some separate, affirmative act to obtain admission.

To be sure, the Government previously operated under a narrower application of Section 1225(b)(2)(A), such that aliens present in the United States who had entered without admission were instead detained under Section 1226(a). *Supra*, p. 13; *but see* 8 C.F.R. § 235.3(b)(1)(ii) (requiring detention of applicants for admission pending removal proceedings "in accordance with section 235(b)(2) of the Act"). But past practice does not justify disregard of clear statutory language. *Armstrong v. Exceptional Child*

*Ctr., Inc.*, 575 U.S. 320, 329 (2015). Indeed, the Supreme Court has rejected longstanding government interpretations that it has deemed incompatible with the INA specifically. *See Pereira v. Sessions*, 585 U.S. 198, 204-05, 208-09 (2018). Therefore, a court must always interpret the statute "as written," *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019), and here the statute as written requires detention of *any* applicant for admission, regardless of whether the applicant is taking affirmative steps toward admission. *See Mejia Olalde*, 2025 WL 3131942, at *5 (rejecting the prior interpretation of Section 1225(b)(2) as "nontextual" and unsupported by any "thorough, reasoned analysis").

**b.** The Government's reading does not render the term "seeking admission" redundant of the phrase "applicant for admission" in Section 1252(b)(2)(A); the structure of Section 1252(b)(2)(A) gives each independent meaning. Section 1225(b)(2)(A) is composed of a primary (operative) clause, which is modified by two prefatory clauses offset by commas. The operative clause requires detention of aliens "seeking admission" who cannot show their admissibility ("if the examining immigration officer …, [then] the alien shall be detained"). That clause's mandate is modified by two prefatory clauses. The first excludes aliens covered by subparagraphs (B) and (C). 8 U.S.C. § 1225(b)(2)(A) ("[s]ubject to …"). Like the first, the second prefatory

clause narrows the operative clause to a subset of "case[s]"—namely, "in the case of an alien who is an applicant for admission...." *Id.* (emphasis added). Section 1225(b)(2) thus lays out a general command (the operative clause), and then qualifies that directive: "[I]f an alien seeking admission is not clearly and beyond a doubt entitled to be admitted," then "the alien shall be detained"—but only if the alien (1) is seeking admission by being "an applicant for admission" under Section 1225(a)(1); and (2) is not covered by subparagraphs (B) or (C). No portion of the statute is redundant.

Even if it were otherwise, the cannon against surplusage "is not a silver bullet." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019). "Redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication." *Barton*, 590 U.S. at 239. Thus, "[t]he Court has often recognized: Sometimes the better overall reading of a statute contains some redundancy." *Id.* (quoting *Rimini St., Inc.*, 586 U.S. at 346) (internal quotations omitted). For that reason, "the surplusage cannon ... must be applied with statutory context in mind," *United States v. Bronstein*, 849 F.3d 1101, 1110 (D.C. Cir. 2017), and "redundancy in one

portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text," *Barton*, 590 U.S. at 239.

That is the case here. Under a straightforward reading of the statute, being an "applicant for admission" is "seeking admission." Although that reading may lead to some redundancy in Section 1225(b)(2)(A), that is "not a license to rewrite" Section 1225 "contrary to its text." *Barton*, 590 U.S. at 239; *see Heyman v. Cooper*, 31 F.4th 1315, 1322 (11th Cir. 2022) ("Th[e] principle [that drafters do repeat themselves] carries extra weight where … the arguably redundant words that the drafters employed … are functional synonyms."). And that is especially true, where that re-writing would be so clearly contrary to Congress's objective in passing the law. *Infra*, p. 40-42.

**c.** Even if "seeking admission" required some separate affirmative conduct by the alien, an applicant for admission who attempts to avoid removal from the United States, rather than trying to voluntarily depart, is by any definition "seeking admission."

Section 1225(b)(2)(A) applies to an alien who is present in the United States without admission, even for years. Although the alien may not have been affirmatively seeking admission during those years of illegal presence, Section 1225(b)(2) is not concerned with the alien's pre-inspection conduct. Rather, the statute's use of present tense language ("seeking" and

"determines") shows that its focus is a specific point in time—when "the examining immigration officer" is making a "determin[ation]" regarding the alien's admissibility. 8 U.S.C. § 1225(b)(2)(A). At *that* point, the alien is "seeking"—*i.e.*, presently "endeavor[ing] to obtain," American Heritage Dictionary, *supra*, at 1174—admission into the United States; if it were otherwise, the applicant would seek to voluntarily "depart immediately from the United States" in lieu of removal proceedings. *See* 8 U.S.C. § 1225(a)(4). An applicant who forgoes that statutory option and instead endeavors to remain in the United States by participating in Section 240 removal proceedings—proceedings in which the alien has the "burden of establishing that [he] is clearly and beyond a doubt entitled to be admitted" or satisfies the criteria for "relief from removal," 8 U.S.C. § 1229a(c)(2)(A), (c)(4)—is plainly "endeavor[ing] to obtain" admission to the United States. American Heritage Dictionary, *supra*, at 1174.

Here, Petitioner opted to remain in removal proceedings, rather than depart the country. Mitchell Decl., RE 4-2, PageID #94-95. He conceded his removability and applied for cancellation of removal and adjustment of status for certain nonpermanent residents under 8 U.S.C. § 1229b(b)(1). *Id.*; Pet., RE 2, PageID #39.

**C.    Section 1226(c) Does Not Support the District Court's Reading.**

The district court also reasoned that the Government's interpretation would render superfluous portions of Section 1226, which contains a separate mandatory detention provision for certain criminal aliens. Order, RE 12, PageID #192-93. That, too, is wrong. Although Section 1226(c) and Section 1225(b)(2) overlap for some aliens, each provision has independent effect. Mere overlap is no basis for re-writing unambiguous statutory text.

**1.**    To begin, there is no colorable argument that the Government's interpretation of Section 1225(b)(2)(A) renders Section 1226(a)'s discretionary detention authority superfluous. Section 1226(a) authorizes the Executive to "arrest[] and detain[]" *any* "alien" pending removal proceedings but provides that the Executive also "may release the alien" on bond or conditional parole. 8 U.S.C. § 1226(a). That provision provides the detention authority for the significant group of aliens who are *not* "applicants for admission" subject to Section 1225(b)(2)(A), *see RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("the specific governs the general")—that is, aliens who have been admitted to the United States but are now removable. For example, the detention of any of the multitude of aliens who have overstayed their visas is governed by Section

1226(a), because those aliens (unlike Petitioner) *were* admitted to the United States.

**2.**     Likewise, the Government's reading of Section 1225(b)(2)(A) does not render Section 1226(c) superfluous.  As described above, Section 1226(c) is the exception to Section 1226(a)'s discretionary detention regime, and it requires the Executive to detain "any alien" who is deportable or inadmissible for having committed specified offenses or engaged in terrorism-related actions "when the alien is released" from the custody of another law enforcement entity.  *See* 8 U.S.C. § 1226(c)(1)(A)-(E).  Like Section 1226(a), subsection (c) applies to significant groups of criminal aliens *not* encompassed by Section 1225(b)(2).

**a.**     Most obvious, Section 1226(c)(1) requires the Executive to detain aliens who *have been admitted* to the United States and are now "deportable."  *See* 8 U.S.C. § 1226(c)(1)(B).  By contrast, Section 1225(b)(2) has no application to admitted aliens.  Next, Section 1226(c)(1) requires detention of aliens who are "inadmissible" on certain grounds.  *See* 8 U.S.C. § 1226(c)(1)(A), (D), (E).  Here, too, Section 1226(c) sweeps more broadly than Section 1225(b)(2), because the referenced grounds cover aliens who are inadmissible but were erroneously admitted.  *See* 8 U.S.C. § 1227(a), (a)(1)(A) (providing for the removal of "[a]ny alien ... in *and admitted to* the

36

United States," including "[a]ny alien who at the time of entry or adjustment of status was within one or more of the classes of aliens *inadmissible* by the law existing at the time...." (emphasis added)). Finally, as noted above, Section 1225(b)(2)(A) does "not apply to an alien ... who is a crewman" or "a stowaway." 8 U.S.C. 1225(b)(2)(B)-(C). Section 1226(c) applies to those aliens who are inadmissible or deportable on one of the specified grounds.

**b.** Section 1226(c) also differs from Section 1225(b)(2) in another crucial way; Section 1226(c) narrows the circumstances under which aliens may be *released* from mandatory detention. Recall that, for aliens subject to mandatory detention under Section 1225(b)(2), IIRIRA allows the Executive to "temporarily" parole them "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(b)(5); *supra*, p. 10. Section 1226(c)(1) takes that option off the table for aliens who have also committed the offenses or engaged in the conduct specified in Section 1226(c)(1)(A)-(E). As to those aliens, Section 1226(c) *prohibits* their parole and authorizes their release only if "necessary to provide protection to" a witness or similar person "and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(4).

**c.** The Government's reading also does not render superfluous Congress's recent amendment of Section 1226(c) through the Laken Riley Act, contrary to the district court's rationale. Order, RE 12, PageID #192-93. That law requires mandatory detention of criminal aliens who are "inadmissible" under 8 U.S.C. § 1182(a)(6)(A), (a)(6)(C), or (a)(7). *See* 8 U.S.C. § 1226(c)(E)(i)-(ii). As with the other grounds of "inadmissibility" listed in Section 1226(c), both (a)(6)(C) and (a)(7) may apply to inadmissible aliens who were admitted in error, as well as those never admitted. *See Mejía Olalde*, 2025 WL 3131942, at *4 (noting that "the Laken Riley Act may apply to situations where § 1225 might not" (citing 8 U.S.C. § 1182(a)(6)(C)(i))). Again, Section 1225(b)(2) has no application to aliens admitted in error.

To be sure, the Laken Riley Act's application to aliens who are inadmissible under §1182(a)(6)(A)—for being "present … without being admitted or paroled"—overlaps with Section 1225(b)(2)(A). But again, "[r]edundancies are common in statutory drafting," and are "not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Barton*, 590 U.S. at 239; *see Mejía Olalde*, 2025 WL 3131942, at *4 ("even assuming there were surplusage, that cannot trump the plain meaning of [Section] 1225(b)(2)"). That is especially true where, as here, there is overlap under *any* possible reading of the statute. *See Microsoft Corp. v. I4I Ltd.*

*P'ship*, 564 U.S. 91, 106 (2011) ("[T]he canon against superfluity assists only where a competing interpretation gives effect to every clause and word of a statute") (internal quotation omitted). After all, this portion of the Laken Riley Act requires detention of "arriving aliens" and "applicants for admission" who are taking affirmative steps toward admission, as long as they meet the offense criteria, *see* 8 U.S.C. § 1226(c)(1)(E)(ii)—but Petitioner and the district court would agree that those aliens are subject to Section 1225(b)(2)(A), too. Some redundancy is unavoidable.

In any event, Section 1226(c) still does independent work, despite the overlap, by preventing the Executive from releasing the specified criminal aliens on parole. *Supra*, p. 37. In fact, Congress's desire to further limit the parole power with respect to criminal aliens was one reason it enacted the Laken Riley Act. The Act was adopted in the wake of a heinous murder committed by an inadmissible alien who was "paroled into this country through a shocking abuse of that power," 171 Cong. Rec. at H278 (daily ed. Jan. 22, 2025) (Rep. McClintock), and an abdication of the Executive's "fundamental duty under the Constitution to defend its citizens," 171 Cong. Rec. at H269 (Rep. Roy). The Act thus reflects a "congressional effort to be double sure," *Barton*, 590 U.S. at 239, that unadmitted criminal aliens are

not paroled into the country through an abuse of the Secretary's exceptionally narrow parole authority.

### D. The District Court's Narrow Interpretation Subverts Congressional Intent.

The district court's reading is not only textually baseless; it also subverts IIRIRA's express goal of eliminating preferential treatment for aliens who enter the country unlawfully. *See King v. Burwell*, 576 U.S. 473, 492 (2015) (rejecting interpretation that would lead to result "that Congress designed the Act to avoid"); *New York State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 419-20 (1973) ("We cannot interpret federal statutes to negate their own stated purposes.").

Recall that one of IIRIRA's express objectives was to dispense with the perverse pre-1996 regime under which aliens who entered the United States unlawfully were given "equities and privileges in immigration proceedings that [were] not available to aliens who present[ed] themselves for inspection" at the border, including the right to secure release on bond. House Rep., *supra*, at 225; *supra*, pp. 6-7. The lower court's interpretation would restore the regime Congress sought to discard: It would require detention for those who present themselves for inspection at the border in compliance with law, yet grant bond hearings to aliens who evade immigration authorities, enter the United States unlawfully, and remain here

unlawfully for years or even decades until an involuntary encounter with immigration authorities. That is *exactly* the "perverse incentive to enter" unlawfully, *Thuraissigiam*, 591 U.S. at 140, that IIRIRA sought to eradicate. This Court should reject any interpretation that is so transparently subversive of Congress's stated objective. *King*, 576 U.S. at 492.

The Government's reading, by contrast, not only adheres to the statute's text and congressional intent, but it also brings the statute in line with the longstanding "entry fiction" that courts have employed for well over a century to avoid giving favorable treatment to aliens who have not been lawfully admitted. Under that doctrine, all "aliens who arrive at ports of entry ... are treated for due process purposes as if stopped at the border," including aliens "paroled elsewhere in the country for years pending removal" who have developed significant ties to the country. *Thuraissigiam*, 591 U.S. at 139 (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). For example, *Kaplan v. Tod*, 267 U.S. 228 (1925), held that an alien who was paroled for nine years into the United States was still "regarded as stopped at the boundary line" and "had gained no foothold in the United States." *Id.* at 230; *see also Mezei*, 345 U.S. at 214-15. The "entry fiction" thus prevents favorable treatment of aliens who have not been admitted—including those who have "entered the country clandestinely."

*Yamataya v. Fisher*, 189 U.S. 86, 100 (1903). IIRIRA sought to implement that same principle with respect to detention. The Government's reading is true to that purpose; the district court's reading subverts it.

> ### E. The Supreme Court's Decision in *Jennings* Does Not Undermine the Government's Interpretation.

The Government's interpretation is consistent with the Supreme Court's decision in *Jennings*, 583 U.S. 281. *Cf.* Order, RE 12, PageID #191. *Jennings* reviewed a Ninth Circuit decision that applied constitutional avoidance to "impos[e] an implicit 6-month time limit on an alien's detention" under Sections 1225(b) and 1226. 583 U.S. at 292. The Court held that neither provision is so limited. *Id.* at 292, 296-306. In reaching that holding, the Court did not—and did not need to—resolve the precise groups of aliens subject to Section 1225(b) or Section 1226. Nonetheless, consistent with the Government's reading, the Court recognized in its description of Section 1225(b) that "Section 1225(b)(2) .... serves as a catchall provision that applies to all applicants for admission not covered by §1225(b)(1)." *Id.* at 287.

To be sure, *Jennings* described the detention authorities in Section 1225(b) and Section 1226, and in that context summarized Section 1226 as applying to aliens "already in the country":

In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

583 U.S. at 289; *see also id.* at 288 (characterizing Section 1226 as applying to aliens "once inside the United States"). But "[t]he language of an opinion is not always to be parsed [like the] language of a statute," and instead "must be read with a careful eye to context." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373-74 (2023) (quotation omitted). When describing the scope of Section 1226 in particular, *Jennings* refers to aliens "present in the country" who are removable under 8 U.S.C. § 1227(a)—a provision that applies *only* to admitted aliens. *See* 583 U.S. at 288. The Government's interpretation is perfectly consistent with that understanding: it allows that Section 1226 is the exclusive source of detention authority for the substantial category of aliens who are were admitted into the United States but are now removable. *Supra*, pp. 34-35.

Moreover, nothing in the quoted language from *Jennings* suggests that Section 1226 is the *sole* detention authority for *every* "alien[] already in the country," and the passage's use of the word "certain" conveys the opposite. Indeed, the district court itself acknowledged that "the Supreme Court did not rule on whether non-admitted or inadmissible aliens fell within [the]

boundaries of § 1226(a) as opposed to § 1225(b)(2)(A)." Order, RE 12, PageID #191 n.4. At a minimum, the quoted language is ambiguous and such uncertain language is insufficient to displace the statute's plain text and the manifest congressional purpose; that is especially so, as no part of the holding in *Jennings* required resolution of the precise scope of Sections 1225(b) and 1226.

## CONCLUSION

The Court should reverse the district court's order granting the writ of habeas corpus.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

YAAKOV M. ROTH
  *Principal Deputy Assistant*
    *Attorney General*

DREW C. ENSIGN
  *Deputy Assistant Attorney*
    *General*

BENJAMIN HAYES
  *Senior Counsel to the Assistant*
    *Attorney General*

MELISSA NEIMEN-KELTING
Assistant Director

 *s/ Malcolm McDermond*
MALCOLM McDERMOND
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
TEL: (202) 305-7662

*Counsel for Defendant-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate ACMS system on November 21, 2025.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

*s/ Malcolm McDermond*
MALCOLM McDERMOND

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9405 words, excluding the portions of the brief exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in proportionally-spaced 14-point Georgia type.


*s/ Malcolm McDermond*
MALCOLM McDERMOND

# ADDENDUM

## APPELLANT'S DESIGNATION OF
## RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to 6th Cir. Rule 30(g), Respondent-Appellant designates the

following relevant district court documents:

## DISTRICT COURT DOCUMENTS

| Record Entry | Description | PageID Number Range |
|---|---|---|
| 2 | Petition for Writ of Habeas Corpus (August 15, 2025) | 27-43 |
| 2-1 – 2-2 | Exhibits in Support of Habeas Petition: Immigration Court Bond Order and Immigration Court Bond Decision (August 15, 2025) | 44-52 |
| 4 | Response to Petition for Writ of Habeas Corpus (August 27, 2025) | 56-89 |
| 4-1 – 4-4 | Exhibits in Support of Response: Decl. of Tyrone Mitchell Jr., BIA Supplemental Briefing Letter, BIA Decision (August 27, 2025) | 90-101 |
| 6 | Reply in Support of Petition for Writ of Habeas Corpus, and Exhibits (September 2, 2025) | 105-129 |
| 6-1 | Exhibits in Support of Reply: Notice to Appear (September 2, 2025) | 130-133 |

| 10 − 10-1 | Pet'r's Notice of Supplemental Authority (September 5, 2025) | 140-159 |
|---|---|---|
| 11 − 11-1 | Resp.'s Notice of Supplemental Authority (September 6, 2025) | 160-177 |
| 12 | Order Granting Habeas (September 9, 2025) | 178-201 |
| 13 | Status Report (September 29, 2025) | 202-204 |
| 15 | Transcript (October 11, 2025) | 215-256 |
| 16 | Notice of Appeal (October 24, 2025) | 257-258 |